**UNITED STATES of America, Plaintiff,**

**v.**

**ARIZONA FUELS CORPORATION and Eugene Dalton, President, Defendants,**

**Tenneco Oil Company, Appellant.**

**No. 83–1649.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1984.

Decided Aug. 2, 1984.

Rodney L. Solenberger, Dept. of Energy, Washington, D.C., for plaintiff.

Douglas J. Parry, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for appellant.

Before DUNIWAY, FARRIS, and PREGERSON, Circuit Judges.

DUNIWAY, Circuit Judge:

Tenneco Oil Company appeals from an order requiring it to repay to the Receiver of Arizona Fuels Corporation funds received as advance payments for crude oil and retained as setoffs of pre-receivership debts. Tenneco argues that the district court erroneously rejected Tenneco's contractual and equitable right to setoff, improperly used summary proceedings to decide whether to issue the order, and lacked statutory jurisdiction over the funds.

## I. FACTS.

The United States won a $38,000,000 judgment against Arizona Fuels in July, 1981. On June 9, 1982, at the request of the United States, the district court appointed a receiver of Arizona Fuels [R. 210]. Tenneco was one of two creditors specifically named in and served with the order of appointment [*id.* at 5].

On June 1, 1982, Arizona Fuels had made a $750,000 advance payment for oil to be delivered to it in the first half of June. Tenneco delivered about $541,076 worth of oil in this period. On June 14, Tenneco claimed that Arizona Fuels owed a $230,648 deficiency from May, and on June 17 Tenneco applied the remaining $208,924 of the June 1 advance to this deficiency, leaving a claimed deficiency of $21,724 for May. [R. 354 at 8.]

Meanwhile, the Receiver and Tenneco representatives met on June 15 and arranged for payments and deliveries from June 16 to July 15 (but reached no agreement regarding pre-receivership deficiencies). During this period, the Receiver paid $1,383,000 and Tenneco delivered $1,110,939 worth of oil. On August 10, Tenneco claimed that Arizona Fuels owed it a $198,544 deficiency for oil delivered in December 1981, plus the unpaid $21,724 from May,

for a total of $220,268. Tenneco deducted this from the June-July credit of $272,061 and refunded the remaining $51,793. [*Id.* at 8–9.]

On September 30, 1982, the Receiver applied to the district court for an order to show cause directed to Tenneco, seeking repayment of $429,263 plus interest [R. 284]. According to our computations, that figure included an extra $71.00. On October 15, the district court issued to Tenneco an order to appear and show cause [R. 292]. Tenneco filed a series of pleadings in response [R. 313, 325, 346]. The district court ordered Tenneco to refund the $429,-263 [Order of January 28, 1982, R. 354] and directed entry of its order as a final judgment [R. 359]. Tenneco's motion for stay was denied [R. 362]. Tenneco paid, and timely appealed [R. 363].

## II. RIGHT TO SETOFF.

Tenneco argues that the court erred as a matter of law in ruling that Tenneco could not apply a portion of the June 1 advance payment from Arizona Fuels against past deficiencies. Under a contract dating from February, 1981, Arizona Fuels paid Tenneco in advance for deliveries, and Tenneco had the right to deduct past deficiencies from current advance payments. Tenneco relies primarily on a contractual provision:

*Adjustment of Insufficient Payments.* In the event that the advance payment for a particular month of delivery is determined to have been insufficient, Seller will deduct from the current month's advance payment an amount equal to such deficiency, and add an equal amount to the advance payment which was due for the month of delivery. Seller will notify Buyer promptly in writing of the adjusted amount of the current month's advance payment and the amount by which such payment is in arrears. Within three (3) working days of receipt of such notice, Buyer will transfer by wire the amount in arrears in order to maintain full advance payments for all estimated monthly deliveries.

[R. 378, exhibit 3, ¶ 5(c)(i).] Tenneco also claims a general equitable right of setoff.

Although setoffs are permitted in a variety of circumstances, a creditor cannot setoff pre-receivership debts against receivership assets in his possession. *Bien v. Robinson*, 1908, 208 U.S. 423, 428, 28 S.Ct. 379, 381, 52 L.Ed. 556; *Quittner v. Los Angeles Steel Casting Co.*, 9 Cir., 1953, 202 F.2d 814, 815–16; *Republic Supply Co. v. Richfield Oil Co.*, 1932, 59 F.2d 35, 36–37; 75 C.J.S. Receivers § 113. Tenneco concedes the principle, but argues that it properly applied pre-receivership payments to pre-receivership deficiencies (except for § 6,549), under the above contractual provision [Aplt's Brief at 33, 39].

Tenneco, focussing on the June 9 appointment of the Receiver, does the accounting differently from that of the district court. Arizona Fuels paid a $750,000 advance on June 1; Tenneco delivered about $327,357 worth of oil from June 1 to June 9; Tenneco deducted from the pre-receivership payment deficiencies of $233,411 from May and $195,791 from December, leaving Arizona Fuels with a net debt of $6,549 as of June 9. From June 9 to July 15, the Receiver paid $1,383,000; Tenneco delivered $1,324,653 worth of oil, recouped the remaining $6,549 debt, and refunded the balance of $51,793.

Tenneco's argument that the June 1 advance funds were not "receivership assets" is predicated on a proposition for which it offers no support, and we find none: that a setoff relates back to the date when the creditor obtained the assets offset against the debtor. Here, the terms of the contract did not make setoffs automatic, but rather provided a specific procedure ("Seller shall deduct ...," "Seller will notify Buyer ...," "Buyer will transfer ..." [¶ 5(c)(i), quoted above]). Tenneco did not "deduct" or "notify" before the appointment of the Receiver on June 9, as it would have been entitled to do, but afterward on June 15 and August 10.

Tenneco purports to have applied the setoffs, or at least the first one (even under the district court's accounts, Tenneco ar-

gues, the June 1 advance exceeded the June 1 to 15 deliveries by $208,924, which thus was pre-receivership money available to setoff the pre-receivership debt [Aplt's Brief at 36]), against funds belonging to Arizona Fuels, not the Receiver. But the district court vested all rights and title to all Arizona Fuels' assets in the Receiver on the date of appointment. The appointment order authorized the Receiver to hold, protect and preserve, manage and control the monies and properties of Arizona Fuels, but not to pay creditors' claims without court approval [R. 210 at 2, 4]. The latter limitation is crucial to the purpose and function of receiverships, which suspend all creditors' claims, contractual or otherwise, pending judicial determination of assets, liabilities, and claimants' priorities. Notwithstanding Tenneco's actual possession of Arizona Fuels' funds, Tenneco lost its right, contractual or otherwise, to unilaterally settle past debts on June 9. After that date, the balance of the advance payment and any oil delivered against that credit were receivership property. We therefore hold that the district court properly rejected Tenneco's claimed right to setoff.

## III. PROCEDURAL AND JURISDICTIONAL CLAIMS.

Tenneco argues that the district court disregarded the Federal Rules of Civil Procedure by granting the Receiver's application for an order to show cause, rather than requiring the Receiver to file a plenary action to recover the funds; that summary determination of the parties' contractual rights violated Tenneco's constitutional right under the Seventh Amendment to a jury trial; and that the Receiver lacked jurisdiction over the disputed funds because he did not comply with the filing requirements of 28 U.S.C. § 754.

### A. *Summary Procedure.*

Tenneco argues that the district court improperly ordered the payment after summary proceedings ancillary to the main action, *United States v. Arizona Fuels Corp.*

Instead, Tenneco argues, the Receiver should have sought to recover the funds by filing a plenary action against Tenneco, with all the procedural trimmings of the Federal Rules. *See* Fed.R.Civ.P. 66.

Rule 66 provides that the Rules apply to actions by or against the Receiver, but does not speak to the procedures that a court is to use in administering a receivership. Rule 66 neither authorizes nor precludes the use of summary proceedings rather than actions under the Rules in circumstances such as the present one.

■■■ Although precedents are few and far between, the traditional rule is that summary proceedings are appropriate and proper to protect equity receivership assets. *Bien v. Robinson*, 208 U.S. at 428, 28 S.Ct. at 381; *McMullen v. Hurley*, 8 Cir., 1923, 291 F. 374, 376; 2 *Clark on Receivers* § 584 at 954 (3d ed. 1959). *See also Republic Supply Co. v. Richfield Oil Co.*, 59 F.2d at 36 (not reviewing the propriety of the summary procedure because the appellant waived the issue by its general appearance in response to a petition, in a case involving an order to turn over property held as a setoff). A receiver may proceed summarily to recover money belonging to the receivership by petition to the appointing court for an order to show cause against a possessor not a party to the original action. 75 C.J.S. Receivers §§ 319, 118 n. 57. Receivership courts have the general power to use summary procedure in allowing, disallowing, and subordinating the claims of creditors. 1B J. Moore, *Moore's Federal Practice* ¶ 0.419[2.–1] at 600 (2d ed. 1983 rev.).

Tenneco cites cases holding that, in particular circumstances, a receiver must file a plenary action against a third party who possesses claimed receivership property, rather than invoking summary proceedings ancillary to the main action.

■■■ This is true when, for example, a receiver asks the court to determine the ultimate merits of the parties' claims to the property. In *Dold Packing Co. v. Doermann*, 8 Cir., 1923, 293 F. 315, the receiver

filed an application and petition attacking the validity of a contract; the district court issued an order to show cause; Dold contested the procedure and lost, then contested the substance and lost. 293 F. at 320–21. The appellate court held that the summary procedure was improper to adjudicate the receiver's contractual claim against a non-party (to the main action) possessor of claimed receivership property. 293 F. at 331. Tenneco, as a non-party asserting a contractual right to setoff, argues that this case is similar. But here the district court did not decide the Receiver's and Tenneco's ultimate rights, *i.e.*, the validity of Tenneco's contractual claims based on Arizona Fuels' alleged December and May deficiencies. Rather, the district court determined who was entitled to interim possession of the funds, under the rule against setoff of pre-receivership debts with receivership assets.

Similarly, *American Brake Shoe & Foundry Co. v. New York Railways Co.*, 2 Cir., 1926, 10 F.2d 920, in which a receiver invoked summary proceedings to claim funds held by third party fiduciaries, recited the "well settled rule" that in such a situation a receiver must bring an ancillary plenary suit, rather than proceeding summarily. 10 F.2d at 921. Again, the present case differs because it did not ultimately resolve adverse claims to property. *See McMullen v. Hurley*, 291 F. at 376.

Moreover, Judge Learned Hand held in *American Brake Shoe* that summary proceedings were proper where the third person is made a party to the suit or where the third person becomes sufficiently involved in the receivership action, for example by intervening. 10 F.2d at 921. Here, Tenneco was no stranger to the receivership proceedings. As one of Arizona Fuels' two major creditors, Tenneco was specifically named in and served with the June 9 order of appointment [R. 210 at 5]. Tenneco was served with the June 15 order enjoining Arizona Fuels' being put into bankruptcy, and its counsel appeared at the June 15 preliminary injunction hearing. Tenneco did not oppose the appointment or continuation of the receivership [R. 354 at 5].

■ Because Tenneco had ample notice of and opportunity to contest the Receiver's challenge to the claimed setoffs, there was no denial of due process. *See Goss v. Lopez*, 1975, 419 U.S. 565, 578–79, 95 S.Ct. 729, 738, 42 L.Ed.2d 725; *Mullane v. Central Hanover Trust Co.*, 1950, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865.

Tenneco argues that the use of summary proceedings improperly assumed that the funds were receivership property. But Tenneco's setoffs themselves presumed that the funds were Arizona Fuels', and thus available for setoff against Arizona Fuels' debts. As of June 9, all that had been Arizona Fuels' became the Receiver's [R. 210 at 1].

■ Tenneco argues that the funds in its possession were presumptively Tenneco's. But possession is not determinative; summary proceedings are appropriate to determine right to possession, although not ultimate rights to title or ownership. *See Bien v. Robinson, supra; McMullen v. Hurley, supra.* Tenneco's argument would universally preclude summary proceedings to protect receivership assets from illegitimate but minimally articulate possessors. The authorities reviewed above are contrary.

The district court's order determined the Receiver's right to possession of the funds, based on adjudication of the right to setoff, without determining the validity of Tenneco's claims as a creditor of Arizona Fuels. We hold that summary proceedings were appropriate and proper for this purpose.

B. *Right to Jury Trial.*

Tenneco argues that the Receiver's claim was a contract action whose legal elements, in addition to any equitable elements created by the receivership context, generated a right to jury trial. *Cf. Ross v. Bernhard*, 1970, 396 U.S. 531, 537, 90 S.Ct. 733, 737, 24 L.Ed.2d 729 (general right to jury trial of legal issues). Thus, Tenneco argues, the summary proceedings deprived it of the jury trial that it could have had under

Fed.R.Civ.P. 38 and the Seventh Amendment to the Constitution.

■ But whether Tenneco would have been entitled to a jury trial if the Receiver had brought a plenary action against it is not relevant here. No right to jury trial attaches to equitable proceedings in the administration of a receivership. *See Bien v. Robinson, supra; Burnham v. Todd*, 5 Cir., 1943, ·139 F.2d 338, 342. *Accord Katchen v. Landy*, 1966, 382 U.S. 323, 336–38, 86 S.Ct. 467, 476–78, 15 L.Ed.2d 391 (no right to jury trial in equitable· action in administration of bankruptcy estate); *Barton v. Barbour*, 1881, 14 Otto (104 U.S.) 126, 133–34, 26 L.Ed. 672 (same). Tenneco's conclusion that it would have been entitled to a jury trial in a plenary action, even if correct, does not support its claim that otherwise proper summary proceedings violated any existing right. We have already held that summary proceedings were proper, so the jury trial argument fails.

### C. *Statutory Filing Requirements.*

A receiver achieves jurisdiction and control of property in districts other than that of appointment by filing copies of the complaint and order of appointment in the district court where the property is located. 28 U.S.C. § 754. The Receiver did not file these documents in the Southern District of Texas, which encompasses Houston, where Tenneco claims that it held the funds in question. Tenneco argues that the ·Receiver, not having complied with § 754, lacked statutory jurisdiction over the claimed funds, so that the funds could not qualify as receivership assets that the· district court could proceed summarily to protect.

■ When there is no other basis of jurisdiction, a receiver appointed in one district must file under § 754 to attain jurisdiction over property in other districts. *See S.E.C. v. Equity Service Co.*, 3 Cir., 1980, 632 F.2d 1092, 1095 (allowing a receiver to reassume jurisdiction after a late § 754 filing, when there was no prejudice to other claimants). In this case, however,

three factors weigh against applying § 754 preemptively.

■ First, Tenneco had actual notice of the complaint and the appointment. It was served with the order appointing the Receiver [R. 210 at 5], and was notified ·of and participated in various receivership proceedings before the Arizona district court [R. 354 at 5]. To the extent that the purpose of § 754 is to provide notice, *see S.E.C. v. Equity Service Co.*, 632 F.2d at 1095, Tenneco had more notice than a § 754 filing would have provided. Tenneco claims no prejudice and we can imagine none under the circumstances.

Second, as Tenneco concedes [Brief at 23–24], the district court had personal jurisdiction over Tenneco. If the Receiver had filed a plenary action against Tenneco to recover the funds, the district court for the District of Arizona would have had subject matter jurisdiction ancillary to the main action and personal jurisdiction over Tenneco as an active and continuing participant in the receivership proceedings. *See Haile v. Henderson National Bank*, 9 Cir., 1981, 657 F.2d 816, 822; *United States v. Franklin National Bank*, 2 ·Cir., 1975, 512 F.2d 245, 249; *Tcherepnin v. Franz*, 7 Cir., 1973, 485 F.2d 1251, 1255–56. Failure to file under § 754 would not have divested the ·court of existing jurisdiction. *See Franklin National Bank*, 512 F.2d at 249. The order to show cause and the subsequent order to repay the funds were *in personam* decrees directed to Tenneco, over which the court clearly had jurisdiction.

Third, the intangible nature of the property in question favors a pragmatic view of the § 754 requirement. Although its historical predecessors covered only physical property, § 754 has been said to cover all types of property, including money. *See* Revisers' Note to 28 U.S.C.A. § 754; 7 J. Moore, *Moore's Federal Practice* ¶ 66.08[1] at 1948–50 (2d ed. 1972 rev.). But where the property is essentially in the form of a monetary credit, held by a party over whom the court already has jurisdiction, who has actual notice of the receivership

and has previously appeared in the receivership court, there is no purpose served in requiring the Receiver to trace the funds to Houston and make a § 754 filing there. The functions served by a § 754 filing where property, such as a parcel of land or tangible personal property, is located in a particular district, or where the possessor of the property is not otherwise aware of the receivership, do not apply here.

In these circumstances and where, as we have already held, summary proceedings are otherwise proper, the lack of a § 754 filing in the Southern District of Texas does not bar the district court from proceeding summarily to determine whether Tenneco's setoffs against receivership funds were legal and to order refund of the setoff amounts.

The judgment is affirmed.